**AETNA CASUALTY & SURETY CO., Plaintiff-Appellant, v. BUCKEYE UNION CASUALTY CO., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22075. Decided April 16, 1951.

McKeehan, Merrick, Arter & Stewart, Cleveland, for plaintiff-appellant.

W. M. Byrnes, Cleveland, for defendant-appellee.

(DOYLE, J, of the Ninth District, sitting by designation in the Eighth District.)

## OPINION

By DOYLE, J:

The facts in this litigation were in part stipulated in the Court of Common Pleas of Cuyahoga County, and pertinent parts will appear in the following paragraphs.

An automobile owned by Edward G. Butler was damaged by fire. He took it to The Weaver Motor Company for repair. During the process of the work, the motor company, upon the request of Butler, loaned him one of their cars for his personal use. Butler, while operating the borrowed car, collided with a tractor-trailer outfit owned by an Ohio partnership, under circumstances which made it probable that he was liable to the partnership for the damage to their equipment, resulting from the collision.

The action in the common pleas court was commenced by The Aetna Casualty & Surety Company and directed against The Buckeye Union Casualty Company in which a money judgment was sought by the plaintiff against the defendant, on the claim that it (Aetna) had paid for the damage caused by Butler under its policy of insurance when it was only secondarily liable; that the primary liability rested on the Buckeye Union Casualty Company which company had refused to recognize any liability or pay the claim, although demand and notice had been duly made and given.

At the time of the accident, Butler carried liability insurance with the Aetna Casualty & Surety Company which insured him not only when he was operating his own car but also while using other cars. Applicable provisions of this policy are in the following terms:

"VI. Temporary Use of Substitute Automobile. While an automobile owned in full or in part by the named insured is withdrawn from normal use because of its breakdown, repair, servicing loss or destruction, such insurance as is afforded by this policy for * * * property damage liability with respect to such automobile applies with respect to another automobile not so owned while temporarily used as the substitute for such automobile."

"Conditions. * * * 15. If the insured has other insurance against a loss covered by this policy the Company shall not be liable * : * for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; **provided, however, the insurance under Insuring Agreements V and VI, shall be excess insurance over any other valid and collectible insurance available to the insured,** either as an insured under a policy applicable with respect to the automobile, or otherwise, against a loss covered under either or both of said insuring agreements." (Emphasis ours.)

It also appears that The Buckeye Union Casualty Company had in force, at the time of this collision, a policy of liability insurance issued to the Weaver Motor Co. It is the claim of Aetna that this policy covered Butler with respect to the damages ensuing from his accident. Buckeye vigorously denies its liability for Butler's delict.

Important passages from the Buckeye Union Casualty Company's insuring contract follow:

"Endorsement: It is agreed that such insurance as is afforded by the policy * * * for property damage liability applies also to any customer of the named insured, as insured, subject to the following provisions:'

"1. The insurance applies only if the named insured's operations are classified as 'automobile dealer or repair shop' and only while any such customer is using, for purposes of demonstration or otherwise in direct connection with such business operations, any automobile covered under such classification."

"Division 1. Definition of Operations. Automobile Dealer or Automobile Repair Shop. The ownership, maintenance, occupation or use of the premises herein designated, including the public ways immediately adjoining for the purpose of an automobile dealer or repair shop, and all operations either on the premises or elsewhere which are necessary and incidental thereto, including repairs of automobiles or their parts and ordinary repairs of buildings on the premises and

the mechanical equipment thereof; and the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations and also for pleasure use."

"Conditions. * * * 9. Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

The case was tried to a judge, a jury having been waived. At the request of Aetna, and in compliance with §11421-2 GC, the court made and entered its conclusions of fact and conclusions of law. They appear as follows:

### "Conclusions of Fact.

"1. * * *

"2. The court finds from the evidence that at the time of the collision between the Chevrolet sedan owned by the Weaver Motor Co., and operated by Edward G. Butler, and the truck owned by Dan Gibbs and Son, Butler was using said automobile of the Weaver Motor Co., with its permission and as one of its customers and that such use by him was in direct connection with the business operations of the Weaver Motor Co., being in furtherance of the building up of its business through good will and the maintenance of satisfactory relationships with its customers."

### "Conclusions of Law.

"1. At the time of the collision above referred to, the insurance afforded by the policy issued by The Buckeye Union Casualty Company to the Weaver Motor Co., applied to its customer Edward G. Butler, and extended coverage to him for the liability created by said collision.

"2. Said insurance coverage afforded by the policy of the Buckeye Union Casualty Company to Edward G. Butler, was primary and that afforded to Edward G. Butler by the policy of Aetna Insurance Company constituted excess or secondary coverage only.

"3. Nevertheless, even though The Buckeye Union Casualty Company, insurance coverage was primary and that of Aetna Casualty & Surety Co. secondary, yet by reason of the 'other insurance' provisions of the respective policies and the decision of the Supreme Court in **Farm Bureau Mutual Automobile Insurance Co. v. The Buckeye Union Casualty Company, 147 Oh St 79**, the payment and satisfaction by plaintiff of the claim * * * was made by plaintiff as a volunteer and without

right of recovery of any part thereof from The Buckeye Union Casualty Co.

"4. Said payment did not have the effect of assigning or subrogating plaintiff to any rights which it did not otherwise have or possess.

"5. Defendant is entitled to judgment, and plaintiff's petition should be dismissed at its costs."

Judgment was thereupon entered for the defendant, as above indicated. From this judgment, appeal was perfected to this court on questions of law.

Upon examination of the evidence (agreed stipulation of facts, exhibits, copies of policies, depositions) we conclude that the "conclusions of fact" reached by the trial court are within the bounds of the proof; and that the "conclusions of law" under (1) and (2), as set forth above, are sustained by the contracts of insurance, in the light of the evidence. The difficulty arises from this point on, and to that we now direct our attention.

It will be again noted that the Aetna policy contracted to pay only the excess "over any other valid and collectible insurance available to the insured" while the Buckeye policy agreed to pay the proportion of the loss which the "applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

It thus appears that we have two separate insurance companies bound to the same principal by separate instruments with each limiting its pecuniary liability.

Under the Buckeye policy, the "other insurance" therein mentioned does not apply to the Aetna policy, because of the provision in the Aetna contract insuring only the "excess * * * over any other valid and collectible insurance available to the insured." And from the fact that the amount of the damage settlement (stipulated to have been "fair and just") made by Aetna, came within the limits of the Buckeye policy, it follows that there was at no time a legal liability upon Aetna to pay anything. See: Zurich General Accident & Liability Insurance Co. v. Clamor et al, 124 Fed. (2d) 717.

On the subject of contribution, the courts of this state quote with approval the following principle set out in 29 Amer. Juris. Insurance. Sec. 1333:

"If several insurers bind themselves to pay the entire loss in case of the destruction of the subject of the insurance, and one insurer pays the whole loss, the one so paying has a right of action against his co-insurers for a ratable proportion of the amount paid by him because he has paid a debt which is equally and concurrently due by the other insurers."

However, "one who, with knowledge of the facts and without legal liability makes a payment of money, thereby becomes a volunteer; and * * * equity will not aid a volunteer." **Farm Bureau M. Auto. Ins. Co. v. Buckeye Union Casualty Co., 147 Oh St 79 at pp. 87 and 88.**

"To entitle one to contribution, the payment must be compulsory in the sense that the party paying was under legal obligation to pay." 18 C. J. S. Constribution, Sec. 4, and cases cited under note 48 on page 8.

It is the conclusion of the members of this court that The Aetna Casualty & Surety Company was not under a legal obligation to pay, because of the "conditions" in its policy heretofore set forth; that Butler was insured under the Buckeye Union Casualty Company's policy and the obligation rested upon it to pay the damage; that when Aetna paid the loss, it became a volunteer; and that, under the rules extant in this state, Aetna's action must fail.

Under this view of the case the judgment must be and is affirmed. Exc. Order see journal.

SKEEL, PJ, HURD, J, concur.